## MOORE BROS. CONST. CO. v. CITY OF ST. LOUIS.

### FITCH v. BOUDREAU.

### No. 9180.

Circuit Court of Appeals, Seventh Circuit.

Feb. 11, 1947.

Malcolm I. Frank and Roberts P. Elam, both of St. Louis, Mo., for appellants.

George O. Durham, of St. Louis, Mo., for appellees.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This appeal is from an order determining the rights of two claimants to a fund deposited in the registry of the court for the payment of attorneys' fees in the principal proceeding. Three attorneys filed their claims to various portions of the fund and, subsequently, one of those claimants withdrew, assigning his asserted share in the fund to appellant who had theretofore filed his claim for the entire fund. The third claimant filed claim for one third of the fund and, by the order appealed from, his administrator, appellee here, was granted one-half of the third claimed. The court found her not entitled to the additional sum claimed by her as a share of the $2000 retainer fee paid to the attorneys and not claimed by decedent himself.

The proceeding out of which this ancillary controversy arose was the suit of the Moore Brothers Construction Company against the City of St. Louis, Missouri, for extra work alleged to have been done in Illinois, on the Illinois approaches to a bridge across the Mississippi River, under a contract entered into in 1931.

A few facts involved in the proceeding now before us were stipulated by the parties. Otherwise the facts are seriously in

dispute, which dispute is further complicated by the fact of the death of one claimant, Staunton Boudreau, in August 1943, after the completion of the main litigation in March 1942. This in turn gives rise to controversy over the admissibility of evidence relating to the circumstances under which Boudreau was engaged to work on the main suit, and the terms of his employment in that suit.

The parties stipulated that there was a contract between Moore Brothers and the law firm of Moore and Fitch, and that the lawyers were to receive a retainer fee of $2000 and a contingent fee of 30% of whatever might be recovered from the city over the amount as to which it admitted liability; that George H. Moore (one of the two members of the law firm and the claimant who assigned his share to his former partner, appellant Fitch) qualified as Judge of the United States District Court for the Eastern District of Missouri on June 6, 1935, and thereafter ceased active participation as an attorney in the principal suit; that there was never any partnership relation between Fitch and Boudreau or between the firm of Moore and Fitch and Boudreau, and that any association between the firm and Boudreau, in any litigation, was by special arrangement or contract.

■ Beyond this stipulation, the facts relating to the conduct of the litigation and Boudreau's relation to it are all but hopelessly in dispute. Appellee, his administratrix, relied principally upon the evidence of Judge Moore whose evidence was held by the court, over the objections of appellant, to be admissible. His testimony as to arrangements relating to Boudreau with a representative of the client and with Fitch was contradicted by those two persons. Under these circumstances we must follow the familiar rule of law that we are bound by the findings of the trial judge who heard the witnesses if those findings are supported by substantial evidence, unless, as appellant Fitch contends, the court committed prejudicial error by disregarding all his evidence on the ground that he was an incompetent witness.

The court found the facts as follows, in addition to the stipulated facts already re-cited: When the contract between Moore Brothers and Moore and Fitch was entered into, Judge Moore informed a representative of the company that the law firm would want to have Boudreau associated with them in the case, and that he would be expected to do a substantial part of the work on the case; this representative made no objections, and the contract was entered into accordingly; Boudreau was informed of the arrangement and agreed to become associated in the case on a fee arrangement then agreed to, and this arrangement became binding on the law firm upon Moore's notification of it to Fitch. Pursuant to this arrangement Boudreau performed substantial services, requiring a substantial amount of time, and his name was signed to the complaint as one of the attorneys of record when that complaint was filed February 24, 1934. Boudreau continued to work on the case until the dissolution of the law firm through qualification of Judge Moore as federal district judge, after which time neither Moore nor Boudreau did any work on the case. "The circumstances under which * * * Boudreau ceased to work on the case give rise to an inference that he withdrew from the case and ceased active participation therein under a mutual agreement between him and * * * Fitch which agreement contemplated that said * * * Boudreau should not participate further in the case but should be paid for the labor which he had already performed, if the contingent fee was eventually recoverable through judgment for the plaintiff." The court adopted this inference as a fact.

The court further found that the evidence did not support appellee's claim to a share of the retainer fee for which Boudreau had filed no claim during his lifetime, and that the subsequent arrangement under which Boudreau ceased active participation in the case affected his right to the entire third share of the contingent fee, reducing the portion to which he was entitled and increasing that of Fitch who performed all the services performed under the contract between Moore Brothers and Moore and Fitch, which work was, however, lessened by reason of the fact that after dissolution of the Moore and Fitch firm, Moore Broth-

588

ers engaged another firm of attorneys, Baker, Leseman, Kagy and Wagner, to assist Fitch, under a separate fee arrangement.

The court further found that Boudreau had performed approximately one-half of the services contemplated by the contract that he should perform prior to his withdrawal from participation in the case, and that Fitch had failed to prove, and the court was unable to find from the evidence that Boudreau had agreed to renounce his claim for fees for services rendered by him in this case.

Appellant contends that he was entitled to the entire fund for the reason that the dissolution of the firm upon Judge Moore's qualification as a judge terminated the contract between the firm and Moore Brothers and also the subsidiary contract with Boudreau so that all parties were free to enter into a new contract, and that Boudreau waived any and all claims by an agreement of April, 1936; that the judgment appealed from, whether based on the original contract or on a theory of quantum meruit, was without support in the pleadings, the evidence, and the law. He contends further that the court erred in ruling that Fitch was an incompetent witness, even for the purpose of rebutting the testimony of Judge Moore relating to statements and transactions out of the presence of Boudreau, and in disregarding all of his testimony on that ground. Appellant also challenges the jurisdiction of the court to adjudicate the claim of Boudreau as an ancillary proceeding to the main case of the Moore Brothers.

■ We agree with the court that it had jurisdiction of the parties and subject matter of the proceeding and litigation, with the right to dispose of the fund according to the rights of the parties. This jurisdiction was assumed pursuant to an amended judgment entered in the main litigation March 16, 1942, pursuant to stipulation filed the same date, signed by Moore Brothers, two intervening parties, the City of St. Louis, the law firm of Baker, Leseman, Kagy and Wagner, for themselves and as attorneys for Moore Brothers, and counsel for the two intervenors. The amended portion provided that the judgment of the parties against the city should be satisfied upon payment of $99,258, and that $3,694 of that amount should be paid over to the Baker, Leseman firm for their fees, and the remainder of the amount involved in the contingent fee contract should be deposited in the registry of the court for its determination, and that the court, upon satisfying the judgment, should order Fitch, Moore and Boudreau, all of whom had filed claims for attorneys' liens, to file their respective claims to the fund by April 1, 1942. Apparently in response to this judgment, Fitch, on April 1, filed a very lengthy and verbose petition. The petition denied any right on the part of Moore or Boudreau to any portion of the contingent fee, and prayed judgment for petitioner for the entire fund on deposit. By the same petition, Fitch denied that the court had any jurisdiction to determine the controversy over the fund, all parties being citizens of Missouri, and asked that it be delivered to himself on the ground that adverse claims were without merit. We think the defendant city and the client, Moore Brothers, were both entitled to have the claims of the various parties who had served notices of attorneys' liens, determined in the main proceeding, without being subjected to the further state court litigation threatened by appellant.

The parties disagree as to the scope of the court's ruling as to the admissibility of the Fitch evidence. That ruling was stated as a conclusion of law: "William M. Fitch was an incompetent witness in his own behalf." Appellant contends that this indicates that the court disregarded all his evidence, including that offered to rebut the evidence of Judge Moore as to conversations and transactions entirely outside the presence of Boudreau. Appellee, on the other hand, contends that the ruling was made in response to her motion "to strike all the testimony of Mr. Fitch with reference to his dealings, communications and transactions had with Mr. Boudreau in his lifetime," and that it was therefore limited in scope to that of her objections.

We think there can be no question but that, under the applicable Illinois statute (Ill.R.S. Chap. 51, sec. 2), the ruling, as stated, was too broad, and that the court

should have considered those portions of the Fitch evidence offered to rebut the evidence as to conversations relating to Boudreau and his employment in which Boudreau did not himself participate. However, we need not speculate on whether the court did consider the admissible portions of this evidence, or, if he did not, whether such consideration would have changed his findings, in view of the apparent disregarding of another piece of evidence introduced by Fitch which, it appears to us, conclusively proves the fact that a final settlement had been made between Fitch and Boudreau which, we think, must be construed to include the claim here involved. Before we set out this piece of evidence, it is necessary to consider certain other evidence of record, not referred to by the court in its findings. It appears from the evidence of Judge Moore and from exhibits containing affidavits of Fitch, one executed after Boudreau's death, introduced in evidence by appellee, that Boudreau had space in the offices of the firm, using their various facilities with no contribution whatever to the office expense, and that he worked with them on a number of cases, some of which were brought in by himself and some by the firm. This arrangement apparently continued for several months after the dissolution of the firm, until about April 15, 1936, when Boudreau left the Fitch offices and formed a partnership with another attorney and, about the same time, Fitch formed a new partnership. Counsel for appellee brought out, on cross-examination of Fitch, that there had been a division of business at the time Boudreau left the Fitch offices. This evidence of the division of business and settlement of all accounts is corroborated by the piece of evidence to which we referred above. It consisted of the following letter, written by Boudreau to Fitch, dated February 18, 1941:

"Dear Mr. Fitch:

"This will acknowledge your letter of February 17th and enclosure of copy of letter of same date to Messrs. Case, Voyles & Case, with reference to fees collected in the City vs. Pope case and held by them.

"I appreciate your invitation to meet with you to close unfinished matters. However, such conference would be purposeless. We have no unfinished matters of business.

"Our business was fully and finally settled at the time when you announced your partnership with Mr. Sparling, and I formed mine with Mr. Kramer.

"Our business was then separated completely. You assumed no burden to finish any work for me or to divide any fees then earned with me. I assumed no burden to finish any work for you or to divide any fees with you. This agreement has been carried out on both sides.

"Particularly as to this case: Following and at all times subsequent to our division of business and settlement, and in recognition that you had no further interest in it, you wholly ignored the existence of the case. So far as any interest on your part in its further prosecution was concerned, the case would have gone to the winds for total default. I prosecuted it to a successful conclusion, and realization of substantial fees out of it; and both Mr. Kramer and I devoted weeks of intense effort to prosecution of this case. So did Mr. Stemmler on behalf of his firm. We didn't have so much as an expression of interest in the outcome from you."

This statement, signed by Boudreau, seems to us to be utterly inconsistent with the subsequent assertion of a continuing interest in the fees of this one case here involved. We are unable to understand how any attorney who considered that he still had a claim on the fees of an unfinished piece of litigation in which he had not participated for almost five years could write that "we have no unfinished matters of business." Nor is this conclusion inconsistent with the evidence of Judge Moore who did not purport to know anything of any arrangements between Fitch and Boudreau after he left the firm. Appellee admitted and the court found that her decedent did nothing on the case after that time. We note that the record indicates that by far the greater part of the work done on the case was performed after Judge Moore left. An amended bill of complaint was filed in April, 1937, which entirely superseded the original bill filed in February, 1934, on which Boudreau's

name appears as attorney of record, along with the firm name of Moore and Fitch. The parties stipulated that this amended bill formed the basis for the final recovery in the suit, the master having denied all claims presented in the original petition.

We cannot agree with the conclusion of the District Court that appellee was entitled to one-half of the amount claimed by her decedent from the fees deposited in the registry of the court. Apart from the fact of the dispute in the evidence relied upon to prove appellee's claim, we are convinced that the documentary evidence of her decedent substantiates the contention of appellant that a settlement was had between them and, regardless of what claims each might have had on the fees of the other without that settlement, the statement of Boudreau in 1941 that neither had any claims on the other negates any claim by himself or his representatives for fees in a case subsequently concluded without any participation by him.

Judgment reversed.