**UNITED STATES of America,**
**Appellee and Cross-Appellant,**

v.

**Donald H. JACOBS, doing business as The Jacobs Instrument Company, Appellant and Cross-Appellee.**

**Covington & Burling, Intervenor.**

**No. 8311.**

United States Court of Appeals
Fourth Circuit.

Argued April 13, 1961.

Decided Dec. 29, 1961.

Donald H. Jacobs on brief pro se.

Marvin S. Shapiro, Atty., Dept. of Justice, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., Leon H. A. Pierson, U. S. Atty., Baltimore, Md., and Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., on brief), for appellee and cross-appellant.

George Blow, Washington, D. C. (James C. McKay, Washington, D. C., on brief), for intervenor.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

This is another chapter of a long book, the end of which is not yet at hand. For some of the earlier chapters, see Jacobs v. United States, 4 Cir., 239 F.2d 459; Jacobs v. Tawes, D.C.Md., 151 F.Supp. 770, aff'd. 4 Cir., 250 F.2d 611; Jacobs v. United States, 4 Cir., 252 F.2d 296; Jacobs Instrument Co. v. Comptroller, 216 Md. 290, 140 A.2d 285; United States v. Jacobs, D.C.Md., 187 F.Supp. 630.

The judgment in the original case, brought by the United States to obtain from Jacobs property belonging to the United States and copies of documents, was reopened by the District Court and certain supplemental orders were entered from which both the United States and Jacobs have appealed to this court.

In 1949 Jacobs obtained a government contract, NOrd 10531, for the development of an electronic bombing system to be used in air craft. In 1953, the United States exercised its reserved right to terminate the contractor's work. Thereafter, the United States instituted this action against Jacobs to require him to turn over to the Navy Department personal property drawings and other documents acquired, made or developed by Jacobs during the course of the work under the contract. Jacobs filed a number of counterclaims, which the court disallowed in part, and, to the extent it found the counterclaims meritorious, it concluded that in this action in equity the United States could be required to pay over some $20,072.91, which the court found to be due to Jacobs under the contract. An order was entered requiring Jacobs to permit the copying of all relevant drawings and documents, but conditioning the right of the United States to obtain the copies upon a delivery to the clerk of the court of a check payable to Jacobs in the amount found to be due him. The order provided that Jacobs could obtain the check, after the United States had obtained copies of his drawings and other documents, upon signing a release of all other claims against the United States under the contract and filing a certificate of compliance with the patent provisions of the contract.

Both parties appealed to this court. We affirmed the order of the District Court, holding specifically that the Navy had the right to terminate work by Jacobs under the contract and approving the District Court's conditioning enforcement of the rights of the United States upon its paying into the court the amount of money found to be due to Jacobs.[1]

Thereafter the Comptroller of the Treasury of the State of Maryland sought to assess certain sales and use

taxes to Jacobs. Jacobs brought an action in the District Court, seeking to enjoin the collection of those taxes amounting to some $1900, including penalties and interest. That action was dismissed for want of jurisdiction.[2] We affirmed.[3] Thereafter Jacobs filed a motion to reopen the judgment in the original action brought against him by the United States and to require the United States to pay the Maryland sales and use taxes. That motion was denied without prejudice to a subsequent motion by Jacobs in that action after his liabilities for sales and use taxes had been adjudicated by the state court and after resort to his administrative remedy. We affirmed, granting to the District Court leave to reopen its judgment and to act upon any renewal of the motion which might be filed after termination of the proceedings in the state courts.[4] Thereafter, Jacobs appealed from a decision of a lower state court, sustaining the assessment of sales and use taxes, to the Maryland Court of Appeals. The Maryland Court of Appeals dismissed the appeal because it found that Jacobs had not undertaken to file with it a record complying with its rules, the extracts filed being insufficient for its determination of the questions presented.[5]

Thereafter, and after certain other motions presently to be mentioned had been filed in the original action brought against him by the United States, Jacobs filed a motion in which he again sought to obtain an order requiring the United States to pay the Maryland sales and use taxes. Additionally, he sought reimbursement for certain expenses he alleged he had incurred and compensation for harassment, to which he claimed he had been subjected.

Meanwhile, much time had elapsed since the United States had deposited with the clerk of the court its check payable to Jacobs as required by the original order. Jacobs had not taken down this check nor had he filed a release or a certificate of compliance with the patent provisions of the Navy contract, as required by the original order of the District Court. Whatever other reason he may have had for not having done so, the pendency of the question of his right of reimbursement for any Maryland sales and use taxes, which he might be required to pay furnished some reason for his not executing the release in the form prescribed in the original order of the District Court. Apparently, Jacobs did not undertake to obtain a modification of the prescribed terms of the release to except from its provision his contingent claim for reimbursement for sales and use taxes paid by him.

The United States filed a motion in the original proceeding, in which it sought the return of its check because of Jacobs' noncompliance with the conditions for its delivery to him.

Messrs. Covington & Burling, of Washington, D. C., came upon the scene in one of the earliest chapters of this book. They represented Jacobs in the original action brought in the District Court, but had withdrawn from the case under circumstances later to be mentioned. They re-entered the scene, seeking the allowance of an attorney's fee and the assistance of the court in securing its payment out of the funds represented by the check of the United States, then in the hands of the court.

Still later, Maryland undertook to assert a lien for the sales and use taxes it claimed to be due by Jacobs, and the United States claimed a lien for certain income taxes it had assessed against Jacobs.

After further hearings, the District Court decided that the fund represented by the Government's check for $20,072.-91, was created through the efforts of the

2. 151 F.Supp. 770.

3. 250 F.2d 611.

4. Jacobs v. United States, 4 Cir., 252 F.2d 296.

5. Jacobs Instrument Co. v. Comptroller, 216 Md. 290, 140 A.2d 285.

attorneys, Covington & Burling, by reason of which fact it was authorized to determine and allow a reasonable attorney's fee. The court further decided that the motion in which Jacobs sought to require the United States to pay the Maryland sales and use taxes and reimburse him for certain expenses and to compensate him for other claimed losses did not state a claim upon which relief could be granted. Mr. Jacobs did not appear at these hearings. He was then temporarily residing in Victoria, British Columbia, from whence he communicated with the court by mail, but he was not present in Baltimore to execute releases, and his communications with the court indicated that he had no intention of signing releases or certificates of compliance with the patent provisions of the Navy contract. The District Judge concluded, under those circumstances, that the interests of the United States were adequately protected by its adjudication of all of the claims that Jacobs had asserted under the contract, by the Statute of Limitations, and, as to the patent provisions of the contract, by its possession of copies of all of Jacobs' drawings and other relevant documents. The Court appointed its Clerk receiver for Jacobs, with instructions to endorse the check of the United States in the name of Jacobs and to deposit the funds in the registry of the court, subject to the further order of the Court. It stayed the effectiveness of the order pending an appeal to this Court.

### The Appeal of the United States

The United States first questions the power of the Court to enter an order authorizing its check to be cashed and the funds disbursed without having in hand a release and a certificate of compliance with the patent provisions of the contract, each signed by Jacobs. The argument is that Fed.Rules Civ.Proc. Rule 60(b) (5) and (6), 28 U.S.C.A. is the only source of the Court's power to reopen its judgment, and that neither party moved that the judgment be modified in that respect.

It is true the rule provides "on motion and upon such terms as are just, the court may relieve a party * * * from a final judgment * * *." Ordinarily, the matter can be brought to the attention of the court only by some pleading. The obvious purpose of the provision for a motion is to permit an informal pleading in the action in which the final judgment had been entered, rather than by a more formal pleading in a new and independent action to which reference is made in a later portion of the rule. The rule need not necessarily be read as depriving the court of the power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion.[6] In somewhat comparable situations, it has been held that the rules permit the entry of summary judgment in favor of a party who has not sought it by motion,[7] and the court, upon its own initiative, may set aside a judgment that is void.[8]

Here, however, each of the original parties to the action, the United States and Jacobs, filed motions seeking modification of the judgment. The United States sought a return of the check, which it had delivered to the clerk in compliance with the judgment's requirement, while Jacobs sought to impose further liabilities upon the United States by virtue of the Maryland sales and use tax matter. Meanwhile, Messrs. Covington & Burling, who were allowed to intervene, had filed a motion seeking relief which the District Court subsequently granted. Since both of the original parties were seeking modification of

6. See 6 Moore, Federal Practice ¶ 59.12 (4) (2d ed. 1953), particularly fn. 5 on page 3883.

7. American Auto. Ins. Co. v. Indemnity Ins. Co. of North America, D.C.E.D.Pa., 108 F.Supp. 221, aff'd 228 F.2d 622; see also, 6 Moore, Federal Practice ¶ 56.12 (2d ed. 1953).

8. United States v. Milana, D.C.E.D.Mich., 148 F.Supp. 152.

the judgment, surely the court was not restricted to the particular modifications suggested by the motions of the two original parties. Rule 60(b) expressly provides that the court may impose terms. We need not hold that if the parties ask for more or less than their due, they thereby circumscribe the power of the court to enter an order required by the interests of justice. At least, when the matter has been brought before the court by proper motions by the parties and the judgment was opened up, we think the power of the court to consider the rights of the intervenor, and, thereafter, to frame its own order, was as plenary as it was before the final judgment was originally entered.

The Government next suggests that the District Court had no power to modify the earlier judgment because of its affirmance on appeal by this Court. It does not urge the point, however, because it assumes that this Court would treat this proceeding as an application for leave to modify the original judgment as was done in Tribble v. Bruin, 4 Cir., 279 F.2d 424. We will follow the procedure adopted in Tribble v. Bruin. We need not decide, therefore, whether or not, without our leave, the District Court had the power to modify its earlier judgment after its affirmance.

■ Finally, the United States contends that the District Court abused its discretion when it ordered that the check of the United States should be endorsed in Jacobs' name and cashed, and that some of the proceeds be distributed to Messrs. Covington & Burling without obtaining a release from Jacobs and a certificate of compliance with the patent provisions of the contract. At this late date, however, neither the release nor the certificate of compliance appears necessary to protection of the interests of the United States.

As we have noted, contract NOrd 10531 was terminated in 1953. In this action Jacobs has asserted a great many claims under that contract, all of which have been adjudicated, and the United States is fully protected by the judgment. In-dividual officers and employees of the United States are protected against claims by Jacobs under principles of res judicata and collateral estoppel. It is also agreed that the Statute of Limitations now bars any claim which might be asserted by Jacobs, despite the judgment.

The Government suggests that Jacobs has displayed a litigious nature, and that he would be less likely to attempt enforcement of baseless claims against the United States in the future if he now signed a release. That may be, but the District Court was not necessarily required to provide the United States with protection against baseless claims which could not be successfully asserted against it. So long as the United States was fully protected against the assertion of any enforceable claim, it was within the range of the District Court's discretion to dispense with the requirement that Jacobs agree that he would assert no claim.

Similarly, we think that a certificate by Jacobs that he had complied with the patent provisions of the contract was no longer essential to the protection of the interests of the United States, and the question of whether or not it should be dispensed with was properly addressed to the discretion of the District Court.

The contract provided that the United States should have a nonexclusive, royalty free license to practice any invention made by Jacobs, or reduced to practice in the performance of his contract. It required that Jacobs deliver to the Government a list of all such inventions which he thought patentable, indicating whether he would claim the invention in a patent application, allow the Government to inspect his patent applications, assign to the United States the right to apply for patents on inventions which Jacobs did not wish to claim, and execute instruments confirming the license rights of the United States.

Jacobs actually sought a patent on his electronic navigation and position finding system, the basis of the bombing system he undertook to develop. The Commissioner declined to issue a patent and

Jacobs brought a suit against him in the District Court for the District of Columbia. The District Court held the claims unpatentable over the prior art, and this decision was affirmed on appeal.[9]

It is suggested, however, that although the system, as a whole, may be unpatentable, specific features of it might be. Abstractly, this is true, but the United States for several years has had in its possession copies of all of Jacobs' drawings and other documents developed by him in the performance of the contract. If Jacobs developed, or reduced to practice, any patentable invention, it would be disclosed by these drawings and documents, but the United States did not suggest that these drawings and documents disclosed anything which might reasonably be thought to be patentable. Under such circumstances, requiring a certificate of compliance by Jacobs with the patent provisions of the contract would seem no more than perfunctory formality, one with which the District Judge, in his discretion could properly dispense.

The United States now suggests that its interests would be fully protected if this Court would require the District Judge to execute a release in the name of Jacobs and to hold hearings to determine if, and to what extent, the patent provisions of the contract had not been complied with. Since we found that what the District Court did was within its discretionary power, we think a remand, with any such direction, would be inappropriate. However, the District Court has not ordered disbursement of all of the proceeds of the Government's check. They are to be held subject to the further order of the court. Whether in connection with the further orders of the court anything else should be required of Jacobs, or whether any further hearings may be appropriate, are matters for determination by the District Court in its discretion. Our affirmance of the present order is not intended to restrict in any way the exercise by the District

Court of its discretion in framing future orders in connection with the handling and disbursement of the proceeds of the check.

## The Appeal of Jacobs

On his appeal, Jacobs contends that no fee should have been allowed to Messrs. Covington & Burling, and the court should not have dismissed his motion to require the United States to pay the Maryland sales and use taxes, to reimburse him for certain expenses, and to compensate him for harassment.

As to the attorneys' fees, he first contends that the attorneys forfeited their right to any fee when they declined to urge, as a defense in the original action, that termination of his work under the contract was not in the interest of the national defense. Jacobs, with the high opinion of his own work which one might expect, wanted to undertake to prove that his bombing system was essential to the national defense, and the officers of the United States who terminated his work under the contract were acting contrary to the national interest and beyond the bounds of their discretionary powers. His attorneys at the original trial, having developed other defenses and counterclaims, declined to proceed with that defense and sought to withdraw from the case and obtain a postponement to permit Jacobs to engage other counsel. The District Court declined to permit the attorneys to withdraw, and Jacobs, with apparent reluctance, acquiesced in the advice of his attorneys to abandon the defense based upon his conception of the national interest. Later, however, the District Court permitted Jacobs, appearing in his proper person, to present that defense, and he did so. The District Court found the defense to be without merit.

■ Under these circumstances, we find no basis for a charge of disloyalty on the part of the attorneys. They appear to have acted as responsible officers of the court and with a proper regard for the interest of their client. Their

9. Jacobs v. Watson, 102 U.S.App.D.C. 264, 252 F.2d 828.

efforts in his behalf succeeded in the creation of a fund of some $20,000 for his benefit. That they declined [10] to urge a very questionable defense, later considered by the Court and found to be without merit, does not require a forfeiture of their claim to reasonable compensation for their efforts which created the fund for their client's benefit, now in the hands and under the control of the District Court.

Jacobs also contends that the Court had no power to determine and allow attorneys' fees payable out of the proceeds of the Government's check. He appears to found this contention on the notion that the proceeds of the check are not a fund created as a result of the efforts of the attorneys in his behalf. It is plain, however, that they are.

The District Court in its opinion of November 6, 1959 [11] carefully considered its power to determine and allow reasonable attorneys' fees under the circumstances. For the reasons there stated, we affirm its determination and its allowance of a fee to Messrs. Covington & Burling, payable out of the proceeds of the check.[12]

As to Jacobs' claims arising out of the assessment by Maryland of sales and use taxes, the District Court held that it was without jurisdiction of some of the claims, such as the claim for compensation for alleged harassment. To the extent that it found that it had jurisdiction of these claims, it concluded that they failed to state facts upon which relief could be granted. With this conclusion, we agree.

Jacobs alleges generally that "the sales and use taxes in question were all derived from purchases under the Navy Contract." No facts are alleged in sup-

port of that conclusionary allegation. The articles subjected to tax are not described. There is no statement of their use or of their relation to the work under the Navy contract. It does not appear that he has ever furnished the Navy Department with information upon which it could determine whether or not, or to what extent, the sales and use taxes are allowable costs under contract NOrd 10531. No such information is incorporated in this pleading. Moreover, under Article 5 of the contract, Jacobs' right to compensation is conditioned upon his submitting to the Navy Department an invoice supported by a statement of the allowable costs which he had incurred. So far as appears, Jacobs has submitted no such invoice and has made no effort to pursue his administrative remedy to obtain reimbursement for any Maryland sales and use taxes, which might be an allowable cost under the contract. Since Jacobs does not allege facts which would support a conclusion that any of the Maryland sales and use taxes assessed against him were allowable costs under the contract, or that he has done anything administratively to recover any allowable cost he may have incurred, his motion was fatally defective and was properly dismissed for failure to state a claim upon which relief could be granted.

We think, however, that the dismissal of the claim, to the extent it sought reimbursement for Maryland sales and use taxes, only, should not have been with prejudice. The action, in any event, must be remanded for further proceedings. In their course, we think Jacobs, who has attempted to represent himself, should be allowed a reasonable time within which to remedy, if he can, the evident deficiencies in his present

10. When the District Court refused their request for leave to withdraw from the case and for a continuance, they were prepared to proceed with the defense. They would have done so had not Jacobs then acquiesced in their advice that this defense be abandoned.

11. 187 F.Supp. 630.

12. In addition to the cases discussed by the District Court, see, also, Harrison v. Perea, 168 U.S. 311, 18 S.Ct. 129, 42 L. Ed. 478; Carbon Steel Co. v. Slayback, 4 Cir., 31 F.2d 702; Pink v. Farrington, 67 App.D.C. 314, 92 F.2d 465; Colley v. Wolcott, 8 Cir., 187 F. 595.

statement of his claim for reimbursement for sales and use taxes.

The judgment of the District Court will be affirmed in all other respects. As previously indicated, however, the mandate of this Court will provide that it in no way will circumscribe the discretion of the District Court in framing orders in the future in connection with the handling or disbursement of the funds in the hands of the Court.

Affirmed and remanded for further proceedings.