Raleigh W. ANDREWS, Plaintiff,

v.

CENTRAL SURETY INSURANCE COMPANY, Defendant.

Raleigh W. ANDREWS, Plaintiff,

v.

COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK, Defendant.

Civ. A. Nos. 8655, 66-283.

United States District Court
D. South Carolina,
Florence Division.

Jan. 17, 1969.

James P. Mozingo, III, D. Kenneth Baker, Darlington, S. C., and Philip H. Arrowsmith, Florence, S. C., for Andrews.

George W. Keels, Florence, S. C., Atty. of the Florence, S. C. Bar, for Mrs. Mary Frances Greene Fields.

## ORDER

SIMONS, District Judge.

These two actions were commenced by plaintiff, Raleigh W. Andrews, against defendants seeking to recover the amount of judgments over and above his insurance coverage obtained against him in tort actions for wrongful death and conscious pain and suffering in the Court of Common Pleas for Florence County, together with interest, attorneys' fees and costs. Plaintiff's cause of action was based upon defendants' negligence and/or bad faith in failing to settle the state court actions against him within the limits of defendants' liability coverage of plaintiff when they had an opportunity to do so before the trial of the cases. Upon a trial of the issue by the court without a jury plaintiff was granted judgment against defendants for the sum of $134,000.00, representing the difference between the amount of his insurance coverage and the amounts of the judgments obtained against him in the

wrongful death and survivalship actions arising out of an automobile collision between Andrews' automobile and that of Allen T. Greene wherein Allen T. Greene lost his life, together with interest from the dates of the entry of judgment in the state court tort actions, and together with the costs of this action.

In its order the court further provided as follows:

> "ORDERED that any payment by defendant to plaintiff pursuant to the entry of any judgment be paid into the registry of this court and that the disbursement of such funds shall be made only upon further order of this court upon a proper showing *that the interests and rights of the parties are fully protected, and that plaintiff will not receive any portion of such funds in cash.*" [1] (Emphasis added.)

The court's opinion and order in this case is published in 271 F.Supp. 814.

In due course defendant's counsel appealed the district court's decision to the Fourth Circuit Court of Appeals which affirmed the district court in a per curiam order found in 391 F.2d 935. Shortly thereafter defendants deposited the sum of $160,517.76 with the Clerk of this Court representing the amount of Andrews' judgment against it, together with all accrued interests and costs to the date of such deposit, and thereafter moved to be released and discharged from any further liability in connection with these actions. The court issued its order releasing the defendants from any further liability in connection herewith.

Thereafter, Andrews' attorneys, James P. Mozingo, III, Esq., D. Kenneth Baker, Esq., and Philip H. Arrowsmith, Esq., who represented Andrews in this court and in his appeal to the Fourth Circuit, petitioned for an order disbursing to them as attorneys' fees a sum equal to forty percent of the total recovery, plus their costs and expenses, as itemized in Exhibit "C" attached to their petition, totaling $624.62.

Thereafter, George W. Keels, Esq., Attorney of the Florence, South Carolina Bar who had represented Mrs. Mary Frances Greene Fields, temporary Administratrix of the Estate of Allen T. Greene in the original tort actions for wrongful death and conscious pain and suffering in the Court of Common Pleas for Florence County against Raleigh W. Andrews, plaintiff herein, petitioned for an order permitting him to intervene on behalf of the Estate of Allen T. Greene, deceased, so as to be able to appear in this action and oppose Andrews' attorneys' petition for the allowance of attorneys' fees to them.

The matter is now before this court upon these two petitions.

After several efforts to set a convenient date for hearing on these petitions the matter was eventually heard in Columbia, South Carolina on October 23, 1968. Present at the hearing were Messrs. Mozingo, Arrowsmith, Baker and Keels.[2]

---

1. It was the strong view of the court that it was would be unconscionable for Andrews himself, the original tort defendant, whose highly reckless and wanton conduct brought about the death of Allen T. Greene, to recover in this action and receive any cash from such recovery for his own personal use. It was and is the court's view that the only benefit Andrews should be permitted to derive from this suit is to have judgments entered against him in the state court tort actions satisfied in full so that he would be fully protected from such liens against his real and personal property.

2. Prior to the hearing the court had given considerable attention and thought to this rather unusual situation and had attempted to find some reported cases dealing with the same or similar factual situations which it was unable to do. It was the opinion of the court that Andrews' attorneys who had rendered such effective legal services to Andrews in the district and appellate courts in these cases and who had been instrumental in bringing these funds into the registry of this court, were entitled to some reasonable fee for their services. It was also the opinion of the court that Andrews himself should be protected against the liens of the judgments entered against him in the Clerk of Court's office for Florence County as a result of the recovery against him in the wrongful death and survivalship ac-

At the hearing on these motions on October 23, 1968, in an informal, off-the-record discussion the court expressed its view to counsel that, although it may be that the court lacks jurisdiction over this matter of approving attorneys' fees, nevertheless the court would sign a consent order for a disbursal of the money if counsel could agree upon a distribution which the court felt would do substantial justice to all interested parties. The court first suggested a total attorneys fee to all attorneys, including attorneys for Andrews and the Greene Estate, of one-third of the $160,517.76 on deposit in the court, together with an additional fee of $1,000 to Messrs. Mozingo, Arrowsmith and Baker for their prosecution of the appeal to the Fourth Circuit, together with a reimbursement to them of $624.62 out-of-pocket expenditures, and that the balance of the funds be paid to the beneficiaries and heirs-at-law of Allen T. Greene, deceased, free and clear of any additional claim for attorneys fees on the part of Mr. Keels, upon the satisfaction in full of the judgments against Andrews.

After a discussion among themselves all counsel advised the court that such proposal was not agreeable. After their conference Mr. Keels advised that Mr. Mozingo and his associates would be willing to accept a fee for themselves of one-third of the amount of the deposit together with a reimbursement for their out-of-pocket expenses, which would be a reduction of the forty percent contingent fee claim based upon their contract with their client, the plaintiff

Andrews; and that the remainder of the funds should be then disbursed to Mr. Keels and the Estate of Allen T. Greene, so that he could collect his fee of one-third of the balance based on his contract with the Greene Estate.

The court advised counsel that it would not consent to such a proposition since considerably more than fifty percent of the recovery would be paid as attorneys fees, and a smaller amount would then go to the Greene Estate. Such a proposition did not appeal to the court's sense of justice.

As an alternate the court then suggested that it would approve the following proposition:

(1) The payment of $1,000 to Mr. Mozingo and his associates for prosecuting the appeal in the Fourth Circuit, plus their out-of-pocket expenses;

(2) Forty percent of the remainder as total attorneys fees to be divided as follows: Two-thirds to Mr. Mozingo, Mr. Baker and Mr. Arrowsmith, and one-third to Mr. Keels; and

(3) The remainder of the sixty percent of the deposit be paid direct to Mrs. Mary Frances Greene Fields, Administratrix of the Estate of Allen T. Greene, free and clear of any additional claim for attorneys fees on the part of Mr. Keels.

Counsel refused to agree to this proposition. Thereafter, Mr. Mozingo moved the court to be permitted to withdraw their petition for attorneys fees on the basis that this court was without

tions brought by Mr. Keels for the Allen T. Greene Estate, but that Andrews himself should not pocket any cash recovery from such funds. It was also the opinion of the court that Mr. Keels who had represented the Greene Estate and obtained the judgments in the State Court against Andrews should be given some reasonable fee for his services in obtaining such judgments. It is noted that Mr. Keels was not the attorney of record and did not participate as attorney for Andrews in these present actions. He did, however, testify for plaintiff Andrews upon a trial of these cases in this court and it is assumed that he recovered his

contingent fee which he stated to the court was one-third of the recovery from the $10,000 collected from the defendants after the trial of the state court tort actions. It was the further opinion of the court that after the payment of a reasonable fee to the attorneys from a common fund together with their out-of-pocket expenses, the balance of the funds should be disbursed to the Estate of Allen T. Greene which, according to the court's information, consisted of his widow and two or more children since they had suffered the damages for which these substantial judgments against Andrews were obtained in the state court.

jurisdiction in reference to the attorneys fees since the same represented a dispute between South Carolina residents and there was no diversity of citizenship. He suggested that the funds be left with the Registry of this Court to be released and disbursed upon an order from a state judge upon such terms as this court decreed. Mr. Keels also joined in Mr. Mozingo's contention that the court lacked jurisdiction and asked that he likewise be permitted to withdraw his petition to intervene.

The court then took the entire matter under advisement and suggested that if counsel should be able to agree on a settlement of this controversy among themselves within the framework of the proposition suggested by the court, then the court would be willing to approve the settlement and disbursement, otherwise the court would decide the controversy itself if it determined that it had jurisdiction, or it would defer to the state court's adjudication of the controversy.

Although there has been some indication that counsel were still conferring among themselves it is felt that the court should no longer delay in disposing o this matter.

After considerable additional research the court has been unable to find any authority on all fours upon the factual situation presented here. However, there is much authority which supports the principle that once federal jurisdiction has properly attached in a primary cause of action, the federal court also has ancillary jurisdiction over certain subsidiary or subordinate disputes, including attorneys fees even though it might not be independently able to proceed to adjudicate them. We find the following applicable statement from Wright on Federal Courts, 1963 Edition, Page 17, Sec. 9, Ancillary Jurisdiction, which states as follows:

"§ 9. Ancillary Jurisdiction

The most important instance in which the federal courts hear cases over which no jurisdiction is conferred on them, in terms, by the Constitution, or by the statutes, is where the ill-defined concept of 'ancillary jurisdiction' can be brought into play. By this concept it is held that a district court acquires jurisdiction of a case or controversy as an entirety, and may, as an incident to disposition of a matter properly before it, possess jurisdiction to decide other matters raised by the case of which it could not take cognizance were they independently presented. Thus where the court has jurisdiction of the principal action, it may hear also any ancillary proceeding therein regardless of the citzenship of the parties, the amount in controversy, or any other factor that would normally determine jurisdiction."

Respecting ancillary jurisdiction of federal courts the United States Supreme Court in Fulton National Bank of Atlanta v. Hozier, 267 U.S. 276, 280, 45 S.Ct. 261, 262, 69 L.Ed. 609 (1925), stated:

"The general rule is that, when a federal court has properly acquired jurisdiction over a cause, it may entertain, by intervention, dependent or ancillary controversies; but no controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit."

See also Krippendorf v. Hyde, 110 U.S. 276, 4 S.Ct. 27, 28 L.Ed. 145 (1884).

In Oils, Inc. v. Blankenship, 145 F.2d 354 (10th Cir. 1944), cert. denied 323 U.S. 803, 65 S.Ct. 562, 89 L.Ed. 641, the court held that a federal court which has taken custody and control of property in a proceeding of which it has jurisdiction has ancillary jurisdiction of a subordinate suit or proceeding affecting such property, even though the jurisdictional facts necessary to confer jurisdiction in an independent suit do not exist. The court further stated at page 356 as follows: "The test of whether a suit is ancillary is whether it has direct relation to property or assets actually or con-

structively drawn into the court's possession or control by the principal suit."

In Moore Bros. Const. Co. v. City of St. Louis, 159 F.2d 586 (7th Cir. 1947), which was an appeal from a district court order determining the rights of two claimants (attorneys) to a fund deposited in the registry of the court for the payment of attorneys fees in the principal proceeding, the court held that where on rendition of judgment in action of which court had jurisdiction parties stipulated that judgment could be satisfied upon payment of certain amount, of which a certain sum should be paid to named attorneys and that remainder should be deposited in the registry of the court for a determination of the attorneys entitled to it and the court did order attorneys who had filed the claims for attorneys liens to file their respective claims and the attorneys did so, the court had jurisdiction to determine the controversy irrespective of lack of diversity of citizenship. In that case one of the attorneys contended that the federal court had no jurisdiction to determine the controversy over the fund in the court's custody since all parties were citizens of Missouri. The court overruled such contention stating at page 588:

"We think the defendant city and the client, Moore Brothers, were both entitled to have the claims of the various parties who had served notices of attorneys' liens, determined in the main proceeding, without being subjected to the further state court litigation threatened by appellant."

See also State of Iowa v. Union Asphalt and Roadoils, Inc., 281 F.Supp. 391 (D.C. S.D.Iowa 1968) where the court stated at page 396:

"The precepts of the ancillary jurisdiction doctrine dictate that the federal courts should extend their jurisdiction to encompass orbital disputes subordinate to the principal action so that *complete* justice may be done. * * * Considerations of judicial economy and fairness to all parties underlie the ancillary jurisdiction theory. * * * And once jurisdiction has attached, it will generally continue until it has been fully exhausted." (Citations omitted.)

In that case the court held in the exercise of its ancillary jurisdiction that it would retain jurisdiction over the auxillary matter of attorneys fees, even though it had entered a previous order allowing the attorneys to withdraw from the case without such a condition.

In, In re Hoy's Claim, 93 F.Supp. 265 (D.C.Mass. 1950), Judge Wyzanski, in determining the question as to whether the federal court could determine and enforce a lien for attorneys fees provided for by a Massachusetts Statute, held as follows:

"The answer is that if the federal court has jurisdiction of the client's cause of action—as it has in the instant case because Hutchinson and Thurston are citizens of different states and more than $3,000 is in controversy—it has ancillary jurisdiction over the lien controversy even if there is not diversity of citizenship or a dispute of $3,000 between the attorney and his client."

Citing Woodbury v. Andrew Jergens Co., 69 F.2d 49 (2nd Cir. 1934).

The ancillary jurisdiction of the federal courts recognized by the foregoing authorities would not extend to a situation where the main suit had been fully concluded and there were no assets actually or constructively within the court's possession and control as a result of the principal suit. Such was the case in Bounougias v. Peters, 369 F.2d 247 (7th Cir. 1966). In that case the original tort action filed and tried in the federal district court in connection with Bounougias' injuries had been completely terminated and its judgment satisfied and all funds distributed before the attorney's suit for his fee was commenced. The court held under such circumstances that the district court had no jurisdiction since "the district court had no property connected with this litigation in its custody or control".

It is concluded that this court does have ancillary jurisdiction to deter-

mine the controversy presently before the court, since the court still has in its registry the sum of $160,517.76, which it reserved the right in its original order to control and direct the disbursement of, after a proper showing that the interests and rights of the parties would be fully protected, and that plaintiff Andrews would not receive any portion of such funds in cash.

This reservation of right to supervise and direct the disbursement of such funds was at least acquiesced in by Andrews' attorneys since no appeal was taken to such provision.

■ This court recognizes that the general rule, as stated in Rankin v. Superior Automobile Ins. Co. of Florence, 237 S.C. 380, 117 S.E.2d 525 (1960), is well settled that a claim of an attorney for professional services must, like a claim for other service, rest upon contract between the parties, either express or implied.

■ Thus, in the ordinary situation it would appear that an attorney is entitled to collect any fee for which he has an express or implied contract with his client and the attorney generally is required to look to his client for compensation. Thus, unquestionably Messrs. Mozingo, Baker and Arrowsmith by virtue of their contingent fee contract with Andrews would ordinarily be entitled under the applicable law of this state to collect their forty percent contingent fee from Andrews, *provided* Andrews himself was entitled to collect the amount of the judgment rendered in his behalf by this court in the within actions. However, the recovery awarded Andrews in this case was for the sole purpose of protecting him against the liens of the judgments obtained against him by the Allen T. Greene Estate in the state courts and such recovery was specifically predicated upon the premise that he was under no condition to receive any cash recovery

from his own wrong doing. Consequently this court does not feel that it is required to enforce the contingent fee contract existing between Andrews and his attorneys under the circumstances herein presented.[3]

■ Mr. Keels, the attorney for the Estate of Allen T. Greene, deceased, represented to the court that he had a contingent fee contract with the Greene Estate whereby he would be paid an attorneys fee of one-third of the recovery made by him in its behalf, and it is thus assumed that he has heretofore collected such fee from the $10,000 collected by him in the state court tort actions. Mr. Keels was not an attorney of record for Andrews in the suit in this case, and according to his representation to the court when he appeared as a witness for Andrews he was not collaborating with, nor had any agreement with Andrews' attorneys to share in the proceeds of the recovery from these actions. It thus appears that any recovery inuring to the benefit of the Greene Estate as a result of this action by Andrews could hardly be claimed by Mr. Keels as having been recovered by him. Such recovery was made possible through the efforts of Mr. Andrews and his attorneys which arose out of a breach of the duty which his liability insurance carrier owed to him. Since the Greene Estate was not privy to any contractual relations with Andrews' insurance carriers it had no right to sue the defendants in this case, and it had no independent cause of action against Andrews' insurance carrier. Chitty v. State Farm Mutual Ins. Co., 38 F.R.D. 37 (E.D.S.C.1965). It does not appear just to this court that under his contingent fee contractual arrangement with the Greene Estate that Mr. Keels equitably should recover one-third of the sum to which the Greene Estate may now be entitled. However, the court feels that he should be paid a reasonable fee from the funds in the court's hands since he was instrumental in obtaining the ex-

3. Of course, Andrews' attorneys who rendered such invaluable services to Andrews in protecting his rights and interests are still at liberty to collect the remainder of the fee not herein provided for from Andrews personally if such is possible.

cess judgments in favor of the Greene Estate against Andrews in the state court, which eventually gave rise to the cause of action in favor of Andrews against the defendant insurance companies.

As Justice Fishburne stated in Petition of Crum, 196 S.C. 528, 14 S.E.2d 21, at page 23 (1941):

"It is recognized generally by the Courts that the allowance of counsel fees from a fund is capable of great abuse, and should be exercised with the most jealous caution and circumspection with regard to the rights of litigants, lest thereby the administration of justice be brought into reproach."

It is readily apparent that if Mr. Mozingo and his associates obtained a recovery of forty percent of the funds in the court's registry and that Mr. Keels collected a third of the remainder, then the balance available for payment to the Greene Estate would be considerably less than fifty percent of the recovery. The court cannot under the circumstances approve such fees. Of course the easy way out would be for this court to sustain counsel's motion that this court does not have jurisdiction of this controversy and refer the entire matter to a state court for determination. Such action is not appealing since the court is entirely familiar with all the facts and circumstances surrounding this controversy and the services rendered to all interested persons by the attorneys were involved. It would be a useless waste of judicial time and costs for this court not to accept its responsibility and determine the issues herein presented.

Therefore, after an extended and most careful consideration of this matter over a period of several weeks and in an effort to satisfy itself that justice is being done to all persons interested in this entire controversy the court has concluded as follows:

(1) That the court has jurisdiction to order a proper distribution of the funds within the registry of this court under its ancillary jurisdiction, even though there is no diversity of citizenship between petitioners.

(2) That the requests on the part of Mr. Mozingo and his associates and Mr. Keels to withdraw their respective petitions before the court should be denied.

(3) That Mr. Keels' petition to be permitted to intervene in this controversy be granted, since he and his client, the Allen T. Greene Estate, have an interest in the deposited funds held by the court.

(4) That the $160,517.76 in the registry of this court be disbursed as follows:

(a) Forty (40%) percent of the total to be allotted as attorneys fees to all attorneys and divided as follows:

(1) To Messrs. Mozingo, Baker and Arrowsmith, two-thirds, or Forty-Two Thousand, Eight Hundred Four and 74/100 ($42,804.74) Dollars.

(2) To Mr. George H. Keels, one-third thereof, or Twenty-one Thousand, Four Hundred Two and 36/100 ($21,402.36) Dollars.

(b) One Thousand ($1,000.00) Dollars of the remaining sixty (60%) percent as an additional fee to Messrs. Mozingo, Baker and Arrowsmith for their prosecution of this case to a successful conclusion before the Fourth Circuit Court of Appeals.

(c) Six Hundred Twenty-four and 62/100 ($624.62) Dollars in out-of-pocket expenses as itemized in Exhibit "C" annexed to their petition on file in this court to Messrs. Mozingo, Baker and Arrowsmith.

(d) That the balance of said fund, to wit, the sum of Ninety-four Thousand, Six Hundred Eighty-six and 04/100 ($94,686.04) Dollars be paid to Mrs. Mary Frances Greene Fields as Administratrix of the Estate of Allen T. Greene to be distributed by her to the beneficiaries and heirs-at-law of said Estate in the manner and in the proportions provided for under South Carolina law, free and clear of any further claim for any additional attorneys fees on the part of Mr. Keels.

It is specifically ordered that none of the disbursements hereinabove provided for shall be made by the Clerk of this court until he has received satisfactory evidence that the above mentioned judgments against plaintiff, Raleigh W. Andrews, have been cancelled and satisfied in full.

In the event notice of appeal is filed by any one in connection with this order, the Clerk of this Court is directed forthwith to deposit the funds in his possession in a federally insured savings and loan association, so that such funds will draw interest pending the outcome of such appeal.

The United States Marshal is hereby ordered and directed to serve a certified copy of this order upon all counsel, Raleigh W. Andrews, plaintiff, and Mrs. Mary Frances Greene Fields, Administratrix of the Estate of Allen T. Greene, deceased.

And it is so ordered.