**WESTERN STEEL ERECTION COMPA-
NY, a corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee,**

Morris L. Dunlap and Donald M. Fitzger-
ald, Applicants-Appellees.

No. 247–69.

United States Court of Appeals,
Tenth Circuit.

April 24, 1970.

Rehearing Denied June 10, 1970.

Phil E. Daugherty, Oklahoma City,
Okl., for appellant.

Howard K. Berry, Jr., of Berry &
Berry, Oklahoma City, Okl., for appel-
lees.

Before LEWIS and SETH, Circuit
Judges, and BRATTON, District Judge.

LEWIS, Circuit Judge.

This case presents a controversy be-
tween attorney and client and, after re-
finement of the issues, probes the avail-
ability of Fed.R.Civ.P. 60(b) as a pro-
cedural tool to lodge ancillary jurisdic-
tion in the trial court to determine at-
torneys' fees after dismissal of the main
case by stipulation and with prejudice.
The court below granted the motion of
attorneys Dunlap and Fitzgerald (Dun-

lap), vacated the order of dismissal, took testimony on the question of the fee issue and ultimately entered judgment against Western Steel Erection Company (Western) for $27,349.98 plus interest. The principal case was then again dismissed. By its appeal, Western has contested both the ancillary proceedings leading to the judgment below and the judgment itself. Because we conclude that the application to vacate was erroneously granted, we confine our review to the procedural background of the case.

The original action was a suit by Western against the United States for recovery of income taxes paid under protest. Late in 1964, Dunlap was employed by Western to replace another attorney and to continue negotiations with the Internal Revenue Service concerning the income tax claim. The now vigorously disputed contentions of the parties as to the terms of this employment need not be set out in their unpleasant detail. It is sufficient to state that Dunlap filed suit on behalf of Western on June 25, 1965; that Western gave Dunlap a general power of attorney effective July 31, 1967; that sometime during September, 1968, without consulting with Western, Dunlap reduced an offer of settlement and agreed to accept the sum of $224,630.23 from the United States in full satisfaction of the refund claim. A check in that amount was delivered to Dunlap by the United States, a stipulation for dismissal taken, and on November 26, 1968, pursuant to the stipulation and the ex parte motion of the United States, the case was dismissed. Western was not informed of the existence of the stipulation made on its behalf.

On December 13, 1968, the present controversy was triggered when Dunlap, purportedly acting under the power of attorney from Western, filed a motion to vacate the judgment of dismissal because of the existence of a dispute concerning attorneys' fees and made demand for a determinative hearing of this issue. At a hearing held the same day to lay the jurisdictional claims before the court, Western asserted that the power of attorney running to Dunlap had been revoked by letter of December 10, 1968. Over Western's objection the court orally vacated the order of dismissal and explained as a basis for the action that the dispute vitiated the dismissal which had been premised on the parties' agreement to the amount of settlement.

Hearing on the merits was held January 8, 1969. Western specially appeared and objected to the court's assumption of jurisdiction; Western also had filed a cross-complaint alleging certain employment terms and full payment under those terms and seeking to recover the settlement check. A written demand for jury trial was timely filed. The court overruled Western's motions objecting to jurisdiction and requesting a jury trial and dismissed its cross-complaint. Proceeding to the merits, the court determined Dunlap entitled to the judgment earlier indicated, entered such judgment, and then granted the renewed motion of the United States to dismiss the original case.

■ On appeal the parties have agreed that the vacation of dismissal and assumption of jurisdiction in the ancillary proceedings can be deemed grounded on rule 60(b), providing for relief from a final judgment due to "mistake," and on the court's inherent power to correct faulty orders. However, our inquiry does not take us into a review of the court's discretionary exercise of these corrective tools. Our concern is rather with the initial requirement on standing to apply for relief from final judgment, and we hold that rule 60(b) by its own terms mandatorily barred the application to vacate. We also hold that reliance on a court's inherent powers to support vacation of judgment cannot relax the standing requirement where proceedings under rule 60(b) would be proper.

■ Rule 60(b) states: "On motion and upon such terms as are just, the court may relieve a party *or his legal*

*representative* from a final judgment, order, or proceeding * * *." (emphasis added). This court has held that the term "legal representative" embraces an heir at law who stood in the same position as the deceased judgment debtor in respect to real property transferred to the heir. Ingerton v. First National Bank & Trust Co., 10 Cir., 291 F.2d 662, 664. The Fifth Circuit has similarly allowed a trustee in bankruptcy standing as a "legal representative" under rule 60(b) because of the trustee's power and status in respect to assets of the estate under the Bankruptcy Act. In re Casco Chemical Co., 335 F.2d 645, 651. The analysis is clear: A "legal representative" under the rule is one who by operation of law is tantamount to a party in relationship to the matter involved in the principal action. Here, although Dunlap could assume that posture in respect to the tax refund case, the firm cannot fairly be clothed with such standing regarding its private controversy. If the threshold bar were not restricted, rule 60(b) could be opened to the broadest claims of ancillary jurisdiction and thereby thwart the finality of principal judgments and established procedures to correct fundamental legal errors.[1] More importantly, any relationship between the cause of action in chief and that brought into the court's jurisdiction through its ancillary jurisdiction would become irreparably attenuated. *See* Bounougias v. Peters, 7 Cir., 369

F.2d 247, 249, cert. denied, 386 U.S. 983, 87 S.Ct. 1288, 18 L.Ed.2d 232. We therefore hold that an attorney does not have standing to move under rule 60(b) as a "legal representative." Mobay Chemical Co. v. Hudson Foam Plastics Corp., 277 F.Supp. 413, 416 (S.D.N.Y.), citing Ingerton v. First National Bank & Trust Co., *supra.*

Responding to Western's claim of a standing defect under rule 60(b), appellees have argued that Western, a party in the principal action, asked the court to overturn the dismissal.[2] We note that in its final order entered below, the court made no finding on Dunlap's standing to file the application to vacate. The court did conclude that the power of attorney running to the firm subsisted prior to filing the stipulation of dismissal and during the ancillary proceedings. However, this conclusion obviously went only to Dunlap's authority to effect a binding settlement on behalf of Western.

Our examination of the transcripts of the December 13, 1968 hearing on whether the court had jurisdiction to hear the firm's application for determination of attorneys' fees does disclose some doubt that Western accepted the amended settlement offer, allegedly negotiated without its approval. But the record nonetheless establishes that Western raised its dissatisfaction with the amount of settlement and mode

[1]. Fed.R.Civ.P. 52(b), 59, provide that a motion to alter or amend a judgment must be made no later than ten days after entry of the judgment. See Note, "Federal Rule 60(b): Finality of Civil Judgments v. Self-Correction by District Court of Judicial Error of Law," 43 Notre Dame L.Rev. 98 (1968), for discussion of the thesis that rule 60(b) should not be used to correct fundamental judicial error of law lest appeal and the time limits of rules 52(b) and 59 be obviated.

[2]. Dunlap & Fitzgerald have not asserted standing as a "party" within the rule. We note that the District of Columbia Circuit has denied attorneys standing as parties under the rule 60(b) requirement. Ratner v. Bakery and Confectionery

Workers Int'l Union of America, 129 U.S. App.D.C. 305, 394 F.2d 780. Two attorneys had unsuccessfully addressed an application for determination of attorneys' fees to the lower court. Apparently, independent counsel concluded the court appearances leading to dismissal, see 394 F.2d at 781 n. 1, and the appellate court, in affirming denial of a motion to vacate or alternately for relief under rule 60(b), pointed out that the complaining attorneys did not claim notice of the settlement as a party or counsel for a party. However, the court stressed that the nature of the relief sought controlled in that no interest in attorneys' fees had been urged when dismissal was entered and denied standing as parties on this ground.

of effecting it only in response to the applications for vacation of dismissal and hearing and as the basis for lodging a cross-complaint against Dunlap. Moreover, Western's then-counsel conceded that the company regarded itself bound by the settlement vis-à-vis the United States. The interplay between Western's theory of relief by cross-complaint and the court's ultimate assumption of jurisdiction is patent: The court indicated from the bench that the disagreement on authority to settle for Western determined the validity of the order dismissing the tax refund suit. Even so,

Western did preface its objection to the settlement with the statement that the company had grounds to contest a claim for additional attorneys' fees and never recanted from its continual objection to the court's jurisdiction in the ancillary proceedings.[3] In these circumstances the impetus to vacate can clearly be attributed to Dunlap.

The case at bar presents a controversy that is an independent side effect of the main case and as such must be independently presented to a proper forum.

The judgment is reversed.

---

3. Although appellees' authority is raised to support assumption of ancillary jurisdiction to determine attorneys' fees, rather than standing under rule 60(b), the jurisdictional argument in no manner avoids the infirmity in standing. In United States v. Jacobs, 4 Cir., 298 F.2d 469, 472–473, attorneys were allowed to intervene after each of the original parties to the action had filed motions to modify a judgment which had been affirmed on appeal. In upholding the lower court's ruling, the Fourth Circuit stated:

> We need not hold that if the parties ask for more or less than their due, they thereby circumscribe the power of the court to enter an order required by the interests of justice. At least, *when the matter has been brought before the court by proper motions by the parties* and the judgment was opened up, we think the power of the court to consider the rights of the intervenor, and, thereafter, to frame its own order, was as plenary as it was before the final judgment was originally entered. 298 F.2d at 473 (emphasis added).

Appellees have also cited State of Iowa v. Union Asphalt & Roadoils, Inc., 281 F.Supp. 391, 398 (S.D.Iowa), aff'd 8 Cir., 409 F.2d 1239, wherein attorneys applied under rule 60(b) to amend an order allowing their withdrawal as the state's attorneys to include determination of attorneys' fees. In granting the application, the court relied on both rule 60 and its inherent power to correct faulty orders and did not address the standing question. Even though the court also supported its decision with authority that a court may condition its order of substitution upon an award of attorneys' fees, a nexus readily not apparent in the instant case, we are not persuaded to abridge standing requirements and do not read the case as

so holding since the principal action was still pending at the time the motion to amend was filed, whether or not the substitution order was then final. Moreover, we note that the Eighth Circuit specifically affirmed solely on courts' authority to so condition an order of substitution. 409 F.2d at 1243–1244. Proceedings initiated by motion under rule 60 were not involved in First Iowa Hydro Elec. Co–op v. Iowa-Illinois Gas & Elec. Co., 8 Cir., 245 F.2d 613, 629, cert. denied, 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76. No final judgment had been entered in American Federation of Tobacco Growers v. Allen, 4 Cir., 186 F.2d 590, 592, and City of Hankinson v. Otter Tail Power Co., 294 F. Supp. 249 (D.N.D.), when ancillary proceedings were brought other than by rule 60 motion.

In Andrews v. Central Sur. Ins. Co., 295 F.Supp. 1223, 1228–29 (D.S.C.), the court predicated its assumption of ancillary jurisdiction to award attorneys' fees on its order in the principal action expressly reserving control in the court over funds required to be paid into its registry. Here, appellee Dunlap held the government's settlement check which never reentered the court's registry; nor did the judgment of dismissal in the principal suit reflect more than that the full amount of the settlement had been paid Western. Rather than distinguishing the case on the situs of funds at the time of application, we decline to endorse the rationale of *Andrews*, which deals with what can fairly be termed a rule 60 proceeding, because of the unwarranted broadening of ancillary jurisdiction it forbodes by ignoring established standing requirements under the rule and subject matter requirements explained in Bounougias v. Peters, *supra*.