Oscar Archie CLIFTON, Petitioner–Appellant,

v.

ATTORNEY GENERAL OF the STATE OF CALIFORNIA; Board of Prison Terms, Respondents–Appellees.

No. 91–55577.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 4, 1993.*

Decided July 2, 1993.

---

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34–4.

Alison Minet Adams, Santa Barbara, CA, for petitioner-appellant.

Norman H. Sokolow, Deputy Atty. Gen., Los Angeles, CA, for respondents-appellees.

Before: HUG and O'SCANNLAIN, Circuit Judges, and SEDWICK,** District Judge.

O'SCANNLAIN, Circuit Judge:

We are called upon to decide whether a district court, on its own initiative, can refuse to enforce a judgment order because of a change in the law after the judgment became final.

I

In August of 1976, Clifton was convicted in California state court of first degree murder and sentenced to death. On direct appeal, his sentence was modified to life imprisonment with the possibility of parole. In 1977, section 3041.5 of the California Penal Code became effective, providing prisoners with annual parole hearings. That section was amended in 1982 to provide for parole hearings every two years "if the [Board of Prison Terms] finds that it is not reasonable to expect parole would be granted at a hearing during the following year and states the bases for the finding." Cal.Penal Code § 3041.-5(b)(2)(A).

After Clifton's parole hearing in 1983, the Board of Prison Terms ("BPT") scheduled his next hearing for two years later. In 1987, after exhausting his remedies in state court, he filed a petition for writ of habeas corpus, claiming that the application of section 3041.5(b)(2)(A) to him was unconstitutional. The district court granted his petition, agreeing with Clifton that the denial of annual parole hearings violated the Ex Post Facto Clause. In its February 25, 1988 judgment, the district court ordered that the BPT grant Clifton annual parole hearings. The district court then stayed the judgment pending the outcome of the state's appeal to this court.

** The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.

On October 6, 1988, while the state's appeal was pending, this court issued its first decision in *Watson v. Estelle*, 859 F.2d 105 (9th Cir.1988) ("*Watson I*"), which affirmed the grant of a habeas petition seeking identical relief as that sought by Clifton. On October 28, 1988, the state voluntarily moved to dismiss its appeal of Clifton's judgment, which motion this court granted on November 9, 1988. The mandate issued January 11, 1989.

On September 21, 1989, more than eight months after the mandate issued on Clifton's writ, the *Watson* panel vacated its earlier opinion and reversed the district court's grant of the habeas petition in that case. *See Watson v. Estelle*, 886 F.2d 1093 (9th Cir. 1989) ("*Watson II*").

At Clifton's December 5, 1990 parole hearing, he was denied parole. In direct contravention of the 1988 judgment in his favor, the BPT scheduled Clifton's next parole hearing for two years later.

Proceeding pro se, Clifton filed a motion in the district court which he labeled a "petition for writ of mandate." In his petition, Clifton complained that the attorney general and BPT had ignored the court's 1988 order that he be afforded annual parole hearings. Clifton asked the district court to "*ENFORCE THE ORIGINAL JUDGMENT ORDER THAT BECOME* [sic] *FINAL,* AND MANDATED ON JAN. 11, 1989" (emphasis in original). Apparently treating the motion as a new habeas petition, the court denied it, citing *Watson II* and stating that "subsequent to its decision in this case, the Ninth Circuit Court of Appeals held that California state prisoners serving life sentences need *not* be granted annual parole hearings."[1]

---

1. Both parties recognize that the district court misstated the holding of *Watson II*. *Watson II* does not hold that "California state prisoners serving life sentences need *not* be granted annual parole hearings." *Watson II* does hold, however, that it is not a violation of the Ex Post Facto Clause to apply section 3041.5(b)(2)(A) to prisoners *sentenced to life imprisonment* prior to the implementation of California's Determinate Sentence Law in 1977. *See Watson*, 886 F.2d at 1097–98.

2. Rule 60(b) provides, in pertinent part, that

Clifton filed a timely notice of appeal and was appointed counsel on appeal.

## II

█ The state contends that, because Clifton raises an issue concerning the duration of his confinement, his petition must be treated as a new habeas petition. This characterization enables the state to argue that Clifton has failed to exhaust state remedies in pursuit of the relief he seeks.

The state's position is untenable. Clifton's petition is nothing more than it purports to be—a motion in the 1987 proceeding requesting that the district court enforce its judgment of February 25, 1988. *See, e.g., Moore v. Zant*, 972 F.2d 318, 319 (11th Cir.1992). Clifton has persistently sought the same relief—annual parole hearings. He exhausted his state remedies in pursuit of that relief prior to the district court's grant of his original petition. In essence, the state is arguing that Clifton now must seek compliance with the writ through administrative channels before seeking enforcement from the court. The doctrine of exhaustion has no logical application under these circumstances. *See Jordan v. Arnold*, 472 F.Supp. 265, 287 (M.D.Pa.1979) (dictum), *appeal dismissed without opp.*, 631 F.2d 725 (3d Cir.1980).

## III

Clifton's 1988 judgment having become final, the state never sought to reopen Clifton's case, notwithstanding this court's subsequent decision in *Watson II*. In particular, the state made no effort to seek relief under Federal Rule of Civil Procedure 60(b)(5) or (6).[2] Instead, the state simply ignored the

[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time...

Fed.R.Civ.P. 60(b).

district court's 1988 order for annual hearings and reverted to a two-year schedule. Yet, when Clifton sought to have the court enforce its judgment order, the court refused, citing *Watson II.*

### A

Both parties acknowledge that, as a general principle, "the res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." [3] *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981) (*Moitte*); *see also Ellingson v. Burlington Northern, Inc.,* 653 F.2d 1327, 1331 (9th Cir. 1981) ("Ellingson did not appeal the trial court's decision, so a subsequent change in law can have no effect on the conclusiveness of the earlier case. Otherwise, no judgment would ever be final."). The state seeks to distinguish *Moitie* and *Ellingson* on the ground that in this case the judgment was appealed. The state's argument is unavailing. The state voluntarily dismissed its appeal and Clifton was entitled to his final judgment on the merits.

Next, the state argues that different "triggering" events are involved here, that is, different parole hearings, and therefore this is not a further proceeding on the same claim. The state contends that this case falls within the traditional exception to res judicata "where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation." *State Farm v. Duel,* 324 U.S. 154, 162, 65 S.Ct. 573, 577, 89 L.Ed. 812 (1945). As support, the state cites a number of cases which hold that in the context of tax determinations, *see, e.g., Blair v. Commissioner,* 300 U.S. 5, 9, 57 S.Ct. 330,

331, 81 L.Ed. 465 (1937), and bankruptcy, *see, e.g., West Coast Life Ins. v. Merced Irr. Dist.,* 114 F.2d 654, 662 (9th Cir.1940), a subsequent change in the law can be given effect at a later hearing. The cases cited by the state are inapposite. Clifton sought a determination that he was entitled to annual parole hearings. The district court concluded that he was and ordered the BPT to provide them. The only question to be answered at future parole hearings is whether Clifton is eligible for parole.

Finally, the state suggests that res judicata is inapplicable here because the relief granted by the district court is akin to an injunction. The state points to "well-established rules governing modification of even a final decree entered by a court of equity." *Pasadena City Bd. of Ed. v. Spangler,* 427 U.S. 424, 437, 96 S.Ct. 2697, 2705, 49 L.Ed.2d 599 (1976). However, while a writ of habeas corpus may resemble injunctive relief to the extent that the writ requires state officials to cease enforcing a statute with regard to a particular petitioner, a habeas writ does not grant injunctive relief. *See Severson v. Duff,* 318 F.Supp. 17, 22 & n. 6 (M.D.Fla.1970). Indeed, the state concedes that the relief granted here was not injunctive relief.

The district court held that Clifton had the right to annual parole hearings. If the ideals of finality and repose underlying the doctrine of res judicata are to have any meaning, that right must have fully accrued when the judgment became final. *See United States v. Swift & Co.,* 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932). For us to conclude, under the facts of this case, that the district court's order has become an "instrument of wrong" merely because it rests on a since repudiated rationale would be to nullify the doctrine of res judicata.

---

The Federal Rules of Civil Procedure are applicable to proceedings for habeas corpus to the extent that they are not inconsistent with the rules governing § 2254 cases. Rule 11 of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254; *see also* Fed.R.Civ.P. 81(a)(2).

**3.** We recognize that, because "conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of

constitutional rights is alleged," the inapplicability of res judicata to habeas is "inherent in the very role and function of the writ." *Sanders v. United States,* 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148 (1963). The state does not contend, however, that res judicata does not prevent the *state* from relitigating an issue once a habeas petition has been granted and become final.

## B

In this case, the district court, on its own initiative, refused to enforce its order.[4] In its brief, the state has failed to point to any authority which suggests that a court can vacate a final judgment on its own initiative. Neither Rule 59 nor Rule 60(a) is applicable here. *See* Fed.R.Civ.P. 59 (court may order new trial on its own initiative not later than 10 days after entry of judgment); Fed. R.Civ.P. 60(a) (correction of clerical errors). In contrast to Rule 60(a), which allows a court to correct a clerical error "of its own initiative," Rule 60(b) suggests that, unless there has been fraud upon the court, relief from a final judgment is only available "on motion."[5]

This circuit has never squarely resolved the question whether Rule 60(b) prohibits a district court from sua sponte vacating a final judgment.[6] Some courts have indicated that Rule 60(b) "need not necessarily be read as depriving the court of the power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion." *United States v. Jacobs*, 298 F.2d 469, 472 (4th Cir.1961). Other courts have held that the errors enumerated in Rule 60(b) can be corrected only on motion and not on the court's own initiative. *Dow v. Baird*, 389 F.2d 882, 884–85 (10th Cir.1968).

We need not resolve this issue today. Even if the district court had the power to vacate its judgment on its own initiative, vacation was inappropriate in this case. In those cases in which it has been suggested that Rule 60(b) does not deprive a district court of such authority, a party has brought the issue to the court's attention in some way. In *Simer v. Rios*, 661 F.2d 655 (7th Cir.1981), for example, the Seventh Circuit refused to decide whether intervenors could bring a Rule 60(b) motion, concluding that it was within the district court's power under Rule 60(b)(4) to vacate a judgment that was void because it was obtained in a violation of procedural due process. *Id.* at 663 n. 18. There, the intervenors' motion brought the need for relief to the court's attention. *Id.;* see also *Jacobs*, 298 F.2d at 472 (original parties filed motions to modify); *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 n. 2 (2d Cir.1977) (appellant's Rule 60(b)(6) motion provided notice), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978); and *Battle v. Liberty National Life Ins.*, 770 F.Supp. 1499, 1513 n. 40 (N.D.Ala. 1991) (intervenor's Rule 60(b) motion), *aff'd*

4. The district court did not find extraordinary circumstances present here, nor that justice or the equities required relief. In fact, the court did not even explicitly vacate its prior judgment. In its one sentence order, the court simply indicated that the law had changed.

5. The state argues at several points in its brief that, under the unusual circumstances created by the vacation of *Watson I*, it might have succeeded had it brought a Rule 60(b) motion. In *Polites v. United States*, 364 U.S. 426, 81 S.Ct. 202, 5 L.Ed.2d 173 (1960), the Supreme Court suggested that "when an appeal has been abandoned or not taken because of a clearly applicable adverse rule of law," it might be wrong to inflexibly withhold relief under Rule 60(b) "when there has been a clear and authoritative change in the governing law." *Id.* at 433, 81 S.Ct. at 206. Although *Watson II* may represent a clear and authoritative change in the law, the irrefutable fact remains that the state did not bring a Rule 60(b) motion. Moreover, as Clifton points out, the decision in *Polites* reaffirms *Ackermann v. United States*, 340 U.S. 193, 198, 71 S.Ct. 209, 211, 95 L.Ed. 207 (1950), in which the Court held that Rule 60(b) relief is normally to be withheld where a party has made a deliberate choice not to pursue an appeal. As the *Ackermann* Court noted, "there must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Id.; see also In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 250 (9th Cir.1989).

6. This court refused to reach the question whether Rule 60(b) permits a court to vacate a prior judgment sua sponte in *In re Corey*, 892 F.2d 829, 835 (9th Cir.1989), *cert. denied*, 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990). In *In re Lenox*, 902 F.2d 737, 740 (9th Cir.1990), this court indicated that Rule 60(b) "does not prohibit a bankruptcy judge from reviewing, sua sponte, a previous order.... And although FRCP 60(b) refers to relief from final orders, it does not restrict the bankruptcy court's power to reconsider any of its previous orders when equity so requires." *Lenox*, however, arose in a wholly different context than the present case. The issue in *Lenox* was the BAP's sua sponte rejection of a stipulation. *Id.* at 739. The court noted that as courts of equity, the bankruptcy courts "have the power to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders." *Id.* at 739–40.

974 F.2d 1279 (11th Cir.1992). The state did nothing to bring this issue to the court's attention in this case.

Here, the asserted basis for vacation is a subsequent change in the law. Under Rule 60(b)(5), the court can relieve a party of final judgment if "a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." However, this court has said that "a change in the applicable law after a judgment has become final in all respects is not a sufficient basis for vacating the judgment" under Rule 60(b)(5). *Tomlin v. McDaniel,* 865 F.2d 209, 210 (9th Cir.1989).

The catch-all provision, Rule 60(b)(6), has been invoked to relieve a party of a final judgment in "extraordinary circumstances." *Id.* at 211. In light of the vacation of *Watson I,* the circumstances of this case might have been considered extraordinary had the state sought Rule 60(b)(6) relief in a timely manner. *See Polites,* 364 U.S. at 432, 81 S.Ct. at 206. Yet a subsequent change in the law cannot itself constitute an extraordinary circumstance sufficient to entitle the district court to vacate a final judgment on its own initiative. Otherwise this court's determination in *Tomlin* that a change in the law is not a sufficient basis for vacation would have no force. Moreover, under the facts of this case, the district court should not be allowed to do for the state what the state did not seek to do for itself.

### IV

Because of the BPT's refusal to obey the district court's original order, Clifton asks us to order his release. We decline his invitation. He is, however, entitled to an order granting the process due him, that is, annual parole hearings. *See In re Bowers,* 40 Cal.App.3d 359, 362, 114 Cal.Rptr. 665 (1974).

REVERSED.