BERZON, Circuit Judge,
dissenting:
Three times — in 2006, 2009, and 2010— the district court ordered state officials (“California” or “the State”) to release Robert L. Griffin from segregated housing conditions. Three times, state officials defied that command. California could have appealed the district court’s substantive rulings to us at least twice: after the 2006 Order requiring Griffin’s release, and after the district court in 2010 declined to grant a Federal Rule of Civil Procedure 60(b) motion for relief from that order. But it did not.
The majority does not so frame the case. Instead, understandably troubled by Griffin’s history as a gang leader, it rewrites history, sanctioning California’s defiance of judicial orders, excusing its litigation mistakes, and undertaking review of issues beyond our jurisdiction.
So let us be clear what California is appealing, and what the majority is — or should be — ruling on: the two enforcement *23 orders that followed the underlying 2006 Order granting habeas and the subsequent denial of relief from judgment under Rule 60(b), both of which are final because the State never appealed them. As a result, the only issue properly before this Court now is whether the district court misconstrued its ovm 2006 Order when it directed California to transfer Griffin to less restrictive housing in July 2009 and February 2011 (“2009 Order” and “2011 Order,” respectively). As the district court’s reading of its own earlier order was more than reasonable, the 2009 and 2011 Orders should be affirmed. Although one might think otherwise from the majority opinion, resolving that issue — -whether the district court misconstrued its own earlier, unap-pealed order — resolves this case.
Obviously, public safety is a critical consideration. But the principle that government officials may not defy judicial orders is critical as well, as this country was reminded repeatedly during the civil rights battles of the 1950s and 1960s, see, e.g., Cooper v. Aaron, 358 U.S. 1, 18-19, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958), and again recently with regard to judicial orders to alleviate prison overcrowding, Coleman v. Brown, 922 F.Supp.2d 1004, 1049 (E.D.Cal. & N.D.Cal.2013).
Whether California, having complied with the 2006 Order and released Griffin from segregated housing, could then reva-lidate him as a gang member and send him back to segregated housing is not here at issue, and I express no opinion on that question. Instead, I dissent because, as I demonstrate below, the only consideration that matters at this juncture is that California has never — not even for a moment — complied with the original release order, as construed by the court that issued it.
I.
I begin by identifying the orders not on appeal. Doing so explains why the State’s failure to appeal these decisions limits the issues before us.
The 2006 Order held that further retention of Griffin in the Security Housing Unit (“SHU”) would violate the Eighth Amendment. Specifically, the district court pointed to the combination of the “crushing” conditions of the SHU, an “illusory” gang review process for Griffin, and the “duration of his retention in the SHU for 20 years[,] ... a shockingly long period of time.” Accordingly, the district court directed California to “release Petitioner from the SHU immediately” and to file a notice within one week that it had done so.
Although Griffin “remain[ed] in the constructive custody of the California Department of Corrections and Rehabilitation,” he was at the time of the 2006 Order “housed at a federal prison.” The State so informed the district court for the first time after the 2006 Order issued.
When Griffin returned from federal detention in 2007, the district court reopened proceedings to determine whether California “complied with” the 2006 Order by placing him in the Administrative Segregation Unit (“ASU”) at the Pelican Bay State Prison, and then, later, the SITU at California State Prison, Corcoran. After finding that housing Griffin in the Pelican Bay ASU and the Corcoran SITU violated the “clear spirit” of the 2006 Order, the district court issued orders in 2009 and 2011 to enforce its prior habeas grant.
The State appealed only the 2009 and 2011 enforcement orders, not the 2006 Order. Although the State moved in 2010 for relief from the 2006 Order under Rule 60(b), it did not appeal the district court’s denial of that motion. The State’s decisions not to appeal the 2006 Order or the *24 subsequent denial of relief from judgment significantly narrows the scope of this Court’s jurisdiction. We have before us only the question whether the district court abused its discretion in concluding that its 2006 Order had not been complied with, and in devising orders to assure compliance.
A.
“We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.” Maness v. Meyers, 419 U.S. 449, 458, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975). This “rule is applicable to Governor Brown, as well as the lowliest citizen.” Coleman, 922 F.Supp.2d at 1054. “Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.” Maness, 419 U.S. at 458, 95 S.Ct. 584. Absent an appeal of the original judgment, Rule 60(b) “provides the vehicle ... to bring ... an argument” that “changed circumstances” merit relief from a judgment. Horne v. Flores, 557 U.S. 433, 439, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009); see also Gonzalez v. Crosby, 545 U.S. 524, 534, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005) (“Rule 60(b) has an unquestionably valid role to play in habeas cases.... In some instances ... the State ... seeks to use Rule 60(b)[ ] to reopen a habeas judgment granting the writ.”).
B.
A party that fails to make an appropriate Rule 60(b) motion, or appeal the denial thereof, is bound by the prior judgment notwithstanding any changed circumstances. See Clifton v. Attorney Gen. of Cal., 997 F.2d 660, 664-65 (9th Cir.1993). Clifton involved the enforcement of a district court order requiring the state to provide a prisoner with annual parole hearings. Id. at 665. The case arose in a slightly different procedural posture from this one: the state had neither appealed the district court’s original order granting habeas, nor moved for relief from judgment under Rule 60(b). Id. at 662-63. Instead, the state simply refused to comply with the district court’s order to provide Clifton with annual parole hearings, on the ground that a subsequent change in the law undermined the court’s prior habe-as grant. Id. at 661-62. Clifton moved to enforce the court’s grant of habeas relief, seeking to require the state to provide a parole hearing as ordered.
On appeal, we characterized the district court’s original habeas order as a “judgment [that] ha[d] become final.” Id. at 662. In that posture, it was irrelevant that the law under which Clifton was granted relief was no longer valid. Applying the “general principle [that] ‘the res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case[,]’ ” the court concluded that “Clifton was entitled to his final judgment on the merits.” Id. at 663 (quoting Federated Dep’t Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)).
C.
In this case, unlike in Clifton, the State did move in the district court, in March 2010, for Rule 60(b) relief from the 2006 Order. The State asserted that “newly discovered evidence demonstrates that if this Court requires Respondent to place Griffin in any custody setting less restric *25 tive than SHU, ... the safety and security of the institution where Griffin is housed would be severely compromised, as would public safety.” In support of its motion, the State submitted declarations summarizing evidence that was used to support Griffin’s 2008 validation as an gang member. The State also submitted, but then withdrew, four confidential memoranda allegedly evidencing Griffin’s involvement with the gang at the Corcoran SHU since 2009.
The district court denied the Rule 60(b) motion on the merits. The denial of a Rule 60(b) motion is a final, appealable order. See, e.g., Jeff D. v. Kempthorne, 365 F.3d 844, 850 (9th Cir.2004). The State did not appeal. The State must therefore treat the court’s 2006 Order as valid, and so must we. We likewise cannot review the State’s argument, raised in the Rule 60(b) motion, that changed circumstances rendered the 2006 Order obsolete, because the State failed to utilize “the vehicle ... to bring such an argument” before this Court. Horne, 557 U.S. at 439, 129 S.Ct. 2579.
Notwithstanding the foregoing, the majority opinion is premised on the district court’s failure to consider the existence of “circumstances very different from those that existed when [the district court] issued its original order[.]” Maj. Op. at 19. But any changed circumstances are entirely irrelevant to the question before us. Further, by reaching out to effectively review the district court’s Rule 60(b) decision despite the State’s failure to appeal it, the majority encourages the State to violate final judgments without either appealing those judgments or seeking relief through the appropriate procedural vehicle.
II.
As we lack jurisdiction to review the 2006 Order or the Rule 60(b) denial, we are left to consider whether, in issuing the 2009 and 2011 orders, the district court properly exercised its inherent authority to enforce its 2006 Order. As the majority acknowledges, we review such orders for abuse of discretion. See Maj. Op. at 18. Accordingly, we may reverse the district court “only when the appellate court is convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances.” Harman v. Apfel, 211 F.3d 1172, 1175 (9th Cir.2000). Unless the district court decision is “illogical, implausible, or without support in the record,” Chun v. Korean Airlines Co., Ltd. (In re Korean Air Lines Co.), 642 F.3d 685, 698 (9th Cir.2011), we must affirm.
Moreover, courts of appeals must defer to a district court’s reasonable interpretation of its own order. See, e.g., Powell v. Omnicom, 497 F.3d 124, 133 (2d Cir.2007) (“defer[ring] to the district court’s reasonable and implicit interpretation of its own order”); Eagle Comtronics, Inc. v. Arrow Commc’n Labs., Inc., 305 F.3d 1303, 1314 (Fed.Cir.2002) (“A district court has great discretion when deciding how to enforce violations of its own orders.”); Cave v. Singletary, 84 F.3d 1350, 1354 (11th Cir.1996) (noting “deference on appeal when” “district court’s interpretation of its own order” “is reasonable”); Anderson v. Stephens, 875 F.2d 76, 80 n. 8 (4th Cir.1989) (noting the “inherent deference due a district court when it construes its own order”).
“Deference” is particularly “appropriate in this case, as it has been under the supervision of [the same] District Judge ... and [the] Magistrate Judge ... since its inception.” Gates v. Gomez, 60 F.3d 525, 530 (9th Cir.1995). Yet, although the majority speaks in terms of abuse of discretion review, Maj. Op. at 18, its analysis *26 belies application of this deferential standard.
A.
I begin by looking at the circumstances underlying and the district court’s stated reasons for issuing the 2009 and 2011 enforcement orders.
The 2006 Order directed California to “release Petitioner from the SHU immediately.” On Griffin’s return from federal custody, California placed him in the ASU at Pelican Bay. Griffin then moved to enforce the 2006 Order, asserting that his placement in the Pelican Bay ASU violated the court’s prior directive. The district court assigned Magistrate Judge Vadas to investigate whether that placement constituted compliance with the 2006 Order and to provide a Report and Recommendation (“R & R”).
Magistrate Judge Vadas proceeded to hold extensive evidentiary hearings, during which Griffin’s counsel and the magistrate judge examined witnesses about the ASU conditions. The State’s Institutional Gang Investigator (“IGI”), John McKinney, testified that “[pjhysieally, [the ASU] ... it’s very similar in nature [to the SHU] as far as security measures.” IGI Joseph Bee-son testified that “in the housing unit itself, the interaction [among prisoners] would be similar to a security housing unit.” IGI McKinney testified that exercise conditions were more restrictive in the ASU than at the Pelican Bay SHU, because prisoners exercise in “individual cages.” Correctional counselor Doug Edwards testified that the ASU “is a more restricted environment [than the SHU], more property control. Canteen is more controlled. So [Griffin has] lost some of the privileges that he had previously” in the SHU.
The magistrate judge also heard testimony regarding the process by which California revalidated Griffin as a gang member. IGI Beeson admitted that the 2006 Order did not “impact in any way the way [he] ... investigated Mr. Griffin.” Correctional counselor Edwards testified that “based on who [Griffin] is, how long he’s been in the department, how long he’s been SHU ... we are currently punishing him for being who he is, what he is”
Ultimately, Magistrate Judge Vadas concluded that the ASU is “not only similar to the SHU, but is in fact for real purposes more restrictive.... ” Further, “[t]he fact that Respondents conducted a perfunctory review process of Petitioner’s gang status” after he returned from federal jail in 2007, “does not relieve Respondents of their failure to comply with the court’s [2006] Order.” If Griffin could not be housed in a less restrictive environment, Magistrate Judge Vadas found, California “should have challenged the [2006] Order, but to” place Griffin in the ASU “is not a proper response to Judge Ware’s [2006] Order.” The R & R accordingly concluded that California had not complied with the 2006 Order, when it (1) used the same procedures to validate Griffin as a gang member that the district court previously found deficient; and (2) confined Griffin in similarly harsh conditions as the Pelican Bay SHU.
The district court followed Magistrate Judge Vadas’ R & R. Rejecting California’s “restrictive reading” of the 2006 Order as focused solely on the Pelican Bay SHU, the district court held that the State had violated the “clear spirit of that Order, which was ... designed to place Petitioner in housing that was less restrictive than the SHU.” As the ASU at Pelican Bay was “more restrictive than the SHU housing previously condemned by the Court,” California’s “technical compliance with the [2006] Order” — by moving Griffin from the *27 SHU to the ASU — “was nonetheless an improper response to the Court’s directives.” The district court thus ordered California to “immediately transfer Petitioner to the general population or to housing that is less restrictive than the SHU or the ASU.”
In my view, the 2009 Order was eminently reasonable — certainly not an abuse of discretion. The 2006 Order had directed the State to release Griffin from the SHU. The magistrate judge, who had been “supervisi[ng]” the case “since its inception,” Gates, 60 F.3d at 530, recommended finding California noncompliant after reviewing an extensive evidentiary record regarding the relevant facts underlying the 2006 Order — both the conditions of Griffin’s continued confinement and the procedures pursuant to which California placed him in those conditions. Relying on those findings, the 2009 Order simply clarified that the court’s 2006 Order applied not only to the Pelican Bay SHU, but to any environment tantamount to the SHU.
The majority takes a different view of the 2006 Order, suggesting that the command to “‘release Petitioner from the SHU immediately[ ]’ evidently referred] to the Pelican Bay SHU, the only one discussed in the order ... and the one in which [the district court] thought Griffin was being held.” Maj. Op. at 14 (emphasis added). Although the majority’s interpretation of the 2006 Order may be a permissible one, so is that of the district court. Under these circumstances, the majority has no authority to substitute its interpretation for that of the trial court.
B.
Nor did the district court abuse its discretion in concluding that California again violated the 2006 Order by transferring Griffin to the Corcoran SHU.
Griffin adduced evidence that the Cor-coran SHU was substantially similar to the Pelican Bay SHU. A declaration submitted by the State admitted that “living conditions are essentially the same in each of [the State’s] SHUs.” Magistrate Judge Va-das visited the Corcoran SHU, conducted an inspection, and concluded that:
[t]hough less restrictive in nature than the SHU at [Pelican Bay], Corcoran SHU remains an impermissibly restrictive environment. Every move of an inmate is monitored. Exercise ... is ... in outdoor cages.... Inmates remain in their cells, except when being transferred by escort in chains to medical appointments, law library, disciplinary hearings, and exercise. Inmates ... are fed in their cells. These housing conditions fall short of those envisioned by Judge Ware in his ... 2009 Order.
California argued that additional evidence obtained since December 2009, allegedly documenting Griffin’s continued gang affiliation, made it impossible to place him anywhere but the SHU. But the State never submitted this evidence for the record, and so Magistrate Judge Vadas correctly refused to consider it.
Based on the evidence actually presented, Magistrate Judge Vadas concluded in 2011 that California “continuéis] to fail to comply with the orders of this Court regarding the conditions of confinement of the Petitioner.” The district court agreed, and — as it had done two years prior— directed California to “immediately transfer Petitioner to the general population or to housing that is less restrictive than the SHU or the ASU.”
The district court’s 2011 Order was entirely reasonable. The 2006 Order mandated Griffin’s “immediate[ ]” release “from the SHU.” Interpreting that order to require Griffin’s release from the Cor-coran SHU — when that facility was similar *28 to the Pelican Bay SHU, and California had failed to comply with either of the district court’s previous orders mandating release from such restrictive conditions— was well within the court’s discretion.
C.
The majority’s arguments to the contrary are not supported by the record. The majority concludes that California “did not violate” the 2006 Order, Maj. Op. at 18, because the 2006 Order “did not address” the ASU or the Corcoran SHU, “just the Pelican Bay SHU[,]” id. at 19.
As I have explained, the majority simply disagrees with the judge who issued the 2006 Order as to that order’s proper meaning. The majority provides no explanation — none at all — for why it was “illogical, implausible, or without support in the record,” Korean Air Lines, 642 F.3d at 698, to read the 2006 Order as applying to the Pelican Bay SHU and any similarly restrictive environment. Instead, the majority just substitutes its own reading for the district court’s interpretation, ignoring the deference we owe that interpretation.
Nor does the majority appear to hold clearly erroneous Magistrate Judge Vadas’ factual findings, adopted by the district court, that conditions in the Pelican Bay ASU and Corcoran SHU are similar to the Pelican Bay SHU, and so “fall short of those envisioned by Judge Ware.... ” Further, although the majority takes issue with the district court’s finding that the 2008 gang revalidation was “perfunctory,” the majority does not state whether that finding is clearly erroneous, and if so, how.
In fact, the latter finding was not clearly erroneous. Contrary to the majority’s suggestion that the State adduced new “particularized evidence,” Maj. Op. at 18, to support revalidation, most of the documents lack any details about specific gang activity by Griffin. Instead, they are bare statements by gang members undergoing debriefing that Griffin is still involved in the gang. And ten of the fifteen “new” documents produced by the State predate the 2006 Order.
Moreover, Griffin’s 2007 RICO conviction could not, under the relevant prison regulations, be used to support Griffin’s 2008 gang validation. See CaLCode Regs. tit. 15 §§ 3341.5(c)(5), 3378(e). The last overt act supporting that conviction occurred in 1997, before the six year look-back period for gang validation. Id. Presumably in recognition of these regulations, the State has never cited Griffin’s RICO conviction as a basis for keeping him the SHU or ASU. The majority’s criticism of the district court for failing to consider whether the RICO conviction rendered the 2008 revalidation appropriate, rather than perfunctory, is therefore misplaced.
Unless the district court’s reading of its own order was unreasonable, or its factual findings clearly erroneous, there is no basis for the majority’s conclusion that California complied with the 2006 Order by moving Griffin from one housing unit to another without meaningfully changing his conditions of confinement.
III.
Perhaps to cover over its usurpation of the district court’s enforcement authority, the majority suggests that the district court erred by failing to exercise its authority “with restraint.” Maj. Op. at 18. Judicial restraint is a virtue, but not when a party repeatedly disregards court orders.
In rejecting the district court’s reasonable interpretation of its own order, and saving the State from its own poor litigation choices, the majority opinion serves only to encourage California’s future non- *29 complianee with court directives. The message it sends is clear: the State may refuse to comply with valid court orders, fail to appeal adverse decisions, and decline to take appropriate steps to seek relief. As long as the State has a “well founded” “concern” that compliance with the Constitution will jeopardize the safety of other prisoners — a defense that will often be available where prisoners confined to restrictive housing units are involved— the State’s disregard of court orders will be excused. Maj. Op. at 21.
The majority criticizes the district court for “ ‘substituting its] judgment for that of officials who have made a considered choice’ ” regarding Griffin’s housing. Id. at 20 (citations omitted). I certainly agree that we “must be sensitive to the State’s ... difficult and dangerous task of housing large numbers of convicted criminals.” Brown v. Plata, — U.S. -, 131 S.Ct. 1910, 1928, 179 L.Ed.2d 969 (2011). But “[c]ourts nevertheless must not shrink from their obligation to ‘enforce the constitutional rights of all “persons,” including prisoners.’ ” Id. (citation omitted). We “may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration.” Id. at 1928-29. And “ ‘where federal constitutional rights have been traduced, ... principles of restraint, including comity, separation of powers and pragmatic caution dissolve....’” Stone v. City & Cnty. of San Francisco, 968 F.2d 850, 860-61 (9th Cir.1992) (citation omitted).
The district court here held that Griffin’s federal constitutional rights were violated by his extremely prolonged confinement in extremely restrictive conditions. Whether the district court was right or wrong in that regard is not our concern at this point, and so the deference ordinarily owed to prison officials is beside the point. What is the point is that the State may not violate court orders as to which it never sought appellate review. There is just no basis for upsetting the enforcement orders issued by the district court, which had “supervis[ed]” this difficult case “since its inception[,]” Gates, 60 F.3d at 530, visited the facilities, conducted extensive eviden-tiary hearings, and fashioned the relief being enforced.
On the narrow issue before us, I would affirm. I therefore, respectfully, dissent.