State of CALIFORNIA, Plaintiff–Appellant,

and

United States of America, Plaintiff,

v.

AEROJET GENERAL CORP; Cordova Chemical Company, Defendants–Appellees.

No. 00–16407.

D.C. No. CV–86–00063–EJG.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 2001.

Decided July 6, 2001.

courts of this circuit except as may be provided by 9th Cir. R. 36–3.

Before SCHROEDER, Chief Judge, D.W. NELSON and RAWLINSON, Circuit Judges.

## MEMORANDUM *

The State of California and Aerojet entered into a partial consent decree gov-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

erning the investigation and clean-up of environmental conditions at the Aerojet operating plant near Sacramento in 1986. In 1999, a private purveyor, American States Water Company ("ASWC"), brought a separate suit in state court against the State alleging damage to its ground water sources. The State filed a cross complaint against Aerojet seeking indemnity for any liability arising out of the separate action. Aerojet filed a claim for injunctive relief in the United States District Court for the Eastern District of California seeking to prohibit the State from pursuing its cross complaint, based on two provisions in the partial consent decree. The district court granted Aerojet's motion, declaring that the two provisions forbade the State from suing Aerojet. We affirm.

### STANDARD OF REVIEW

■ This court reviews a district court's interpretation of a consent decree *de novo*. *Gates v. Gomez*, 60 F.3d 525, 530 (9th Cir.1995). Whether a consent decree is reasonably susceptible of a meaning advanced by parol evidence is also reviewed *de novo*. *Brinderson–Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 277 (9th Cir.1992).

### DISCUSSION

Aerojet contends that two provisions of the partial consent decree-Paragraph 22, the Covenant Not To Sue, and Paragraph 30, the Disclaimer of Third Party Liability-forbid the State from seeking indemnity or contribution against Aerojet via a cross complaint in a state court proceeding.

### A. The Covenant Not to Sue

■ The covenant not to sue found in Paragraph 22 of the Partial Consent Decree provides:

Plaintiffs, and each of them, covenant not to take any judicial or administrative action, including the assertion of a lien pursuant to CERCLA Section 107(1) or state law, against Aerojet (including past or present officers, directors and employees) for any "Covered Matters." ... "Covered Matters" shall include any and all Aerojet civil liability to the Plaintiffs or any of them for liability for: ... (5) the interception, extraction, and treatment of plumes of chemicals in the ground water near the periphery of and/or beneath the Aerojet–General Operating Plant as required by Paragraph 7 and Exhibit VI, except as provided therein and in the Program Plan, until Aerojet's obligations terminate pursuant to Paragraph 26.

The State argues that "liability for" does not equate to "liability arising out of." It further argues that the covenant not to sue extends only to protecting Aerojet from the State taking action outside the decree to accomplish those obligations Aerojet was assuming under the Decree. Aerojet, on the other hand, argues that this paragraph prohibits the State from pursuing any judicial action against Aerojet for covered matters which are defined and include any and all Aerojet civil liability to the State for operations of the groundwater extraction and treatment facility ("GET facilities").

■ The State offered parol evidence to support its interpretation of Paragraph 22. Because the partial consent decree was entered in the State of California, we construe the agreement in accordance with California's rules of contract interpretation. *See Gomez*, 60 F.3d at 530; *see also Gates v. Rowland*, 39 F.3d 1439, 1444 (9th Cir.1994) ("The rules of contract interpretation of the situs state govern interpretation of the consent decree".). Under California law, "[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unam-

biguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the contract is reasonably susceptible." *Brinderson–Newberg*, 971 F.2d at 277; *Barris Indus. v. Worldvision Enterprises*, 875 F.2d 1446, 1450 (9th Cir.1989) (citing *Pacific Gas and Electric Co. v. G.W. Thomas Drayage & Rigging Co., Inc.*, 69 Cal.2d 33, 69 Cal. Rptr. 561, 564, 442 P.2d 641 (1968)). Thus, courts must consider extrinsic evidence to determine whether the contract is ambiguous even if the contract appears clear on its face. *Barris Indus.*, 875 F.2d at 1446. If the extrinsic evidence advances an interpretation to which the language of the contract is not reasonably susceptible, however, the evidence is not admissible. *Id.*

The State's proffered parol evidence does not advance a "reasonably susceptible" interpretation of the consent decree. Just as suing for damages arising out of a breach of contract is suing for *liability for* breach of contract, so is suing for indemnity or contribution for damages arising out of the "interception, extraction, and treatment of plumes of chemicals" the same as suing for *liability for* the "interception, extraction, and treatment of plumes of chemicals." Thus, the district court was correct in excluding the parol evidence offered by the State.

B. Paragraph 30—Third Party Liability

■ Paragraph 30, the Disclaimer of Third Party Liability, states that "[n]o party shall be liable for any injuries or damages to persons or property resulting from acts or omissions of any other party in carrying out activities pursuant to this Decree." Both parties agree that this clause was intended to ensure that each party would bear its own liability for its own acts and omissions. Each party also claims that Paragraph 30 supports its respective position.

We must look to the nature of ASWC's complaints to determine the applicability of this paragraph. ASWC sued both the State and Aerojet for their respective roles in the damage to ASWC's water supply. It sued Aerojet for pollution that allegedly occurred during Aerojet's cleanup efforts, and the State for (1) allowing Aerojet to pollute and (2) negligently overseeing Aerojet's cleanup efforts.

If the State is held liable for the complaint's assertions, it will be held liable for its own actions, and not those of Aerojet. To be sure, Aerojet may be the entity primarily responsible for the ground water contamination (hence the State's indemnity and contribution claims). The State, nonetheless, was required to fulfill its duty under the consent decree to oversee the GET facility operations. Paragraph 30 contemplates that the State, and not Aerojet, will be held liable for its own "negligent supervision" of Aerojet's operations.

The State also argues that it should be allowed to pursue its cross complaint against Aerojet because "[t]he covenant at issue makes no colorable promise not to sue for the original ground water contamination." However, ASWC does not seek relief from the State for the "original contamination" of the groundwater or for any acts or omissions of Aerojet. Its complaint is unmistakably based upon the State's approval and oversight of the design, construction, and operation of the groundwater extraction and treatment facilities. For this reason, the State's cross complaint violates Paragraph 30, and the district court did not err in this regard.

AFFIRMED.